1  **WO**

2

3

4

5                    IN THE UNITED STATES DISTRICT COURT

6                        FOR THE DISTRICT OF ARIZONA

7

8

9   | Crestwood Capital Corporation, | No. CV-15-00600-PHX-NVW (Consolidated) |

    Plaintiff,

10

11  v.                                **ORDER**
                                      **[Not for Publication]**

12  Andes Industries, Inc.,
                                      **[Re: No. CV-15-01810-PHX-NVW**
                                      **and No. CV-15-02549-PHX-NVW]**
        Defendant.
13

14  Devon Investment Inc.,            No. CV-15-00604-PHX-NVW

15      Plaintiff,

16  v.

17  Andes Industries, Inc.,

18      Defendant.

19  Preston Collection Inc.,          No. CV-15-00607-PHX-NVW

20      Plaintiff,

21  v.

22  Steven Youtsey,

23      Defendant.

24  Andes Industries, Inc.; and PCT International,   No. CV-15-01810-PHX-NVW
    Inc.,
25
        Plaintiffs,
26
    v.
27
    EZconn Corporation; and eGtran Corporation,
28
        Defendants.

| | |
|---|---|
| Andes Industries, Inc.; and PCT International, Inc., | No. CV-15-02549-PHX-NVW |
| Plaintiffs, | |
| v. | |
| Cheng-Sun Lan; Kun-Te Yang; Chi-Jen Dennis) Lan; Polar Star Management Ltd., | |
| Defendants. | |
| EZconn Corporation, | No. CV-16-00508-PHX-NVW |
| Plaintiff, | |
| v. | |
| PCT International, Inc., | |
| Defendant. | |

Before the Court are the following motions:   Polar Star Management Ltd.'s Motion to Dismiss (Doc. 114, CV-15-02549); Defendant Cheng-Sun Lan's Motion to Dismiss (Doc. 133, CV-15-02549); Defendant EZconn Corporation's Motion to Dismiss Counts I, II, III, VI, VII, VIII, IX, X, XI, and XII (Doc. 26, CV-15-01810); Defendant eGtran Corporation's Motion to Dismiss Counts I, II, III, V, VI, VII, VIII, IX, X, XI, and XII (Doc. 28, CV-15-01810); the Renewed Motion for Jurisdictional Discovery by Andes Industries, Inc., and PCT International, Inc. (Doc. 84, CV-15-00600); and Cheng-Sun Lan's Motion to Strike Portions of Reply in Support of Renewed Motion for Jurisdictional Discovery or, Alternatively, for Leave to File Sur-Reply (Doc. 92, CV-15-00600).  Oral argument was held on June 8, 2016.

## I.    OVERVIEW

This case consolidates six actions involving twelve parties, who form essentially two sides to this litigation.  Four actions were brought to collect amounts owed on loans of nearly $9 million made in 2009-2010 and for unpaid invoices totaling more than $6.6

million during 2012-2013, plus interest.  Two actions were brought by the borrower and purchaser for breach of contract and other claims to obtain, at least, an offset against any liability in the four collection actions.  The borrower's and purchaser's allegations of wrongdoing rely substantially on a related case in which the purchaser obtained a monetary judgment and permanent injunction for patent infringement.  *See PCT International, Inc. v. Holland Electronics, LLC*, CV-12-001797-PHX-JAT.  In the present case, the borrower, Andes Industries, Inc. ("Andes"), and the purchaser, Andes' wholly owned subsidiary, PCT International, Inc. ("PCT International"),[1] allege that during the patent litigation the infringer disclosed emails showing receipt of confidential proprietary information about PCT International from a Taiwanese company that manufactured products for both PCT International and the infringer.  The Taiwanese manufacturer seeks to collect $6.6 million from PCT International for unpaid invoices.  The manufacturer's allegedly wrongful disclosures of technical development information, order information, and corporate financial information to the infringer form the primary basis for Andes and PCT International's twelve claims for breach of contract, fraud, etc., and their claims for offset against the collection actions.

## A.     The Parties

As alleged, Andes is a closely held Nevada corporation with its principal place of business in Mesa, Arizona.  Andes owns PCT International, a closely held Nevada corporation with its principal place of business in Mesa, Arizona.  PCT International develops, manufactures, and sells products for broadband telecommunications networks. Andes shareholders include Kun-Te Yang, Dennis Lan, and Polar Star Management Ltd., a British Virgin Islands corporation.  No shareholder owns a majority interest in Andes.

---

[1] This Order does not adopt the parties' confusing and misleading use of "PII" for PCT International, Inc. and "PCT" for Andes and PCT International, Inc. collectively. The First Amended Complaint implies there is no distinction between the two corporations.

Steven Youtsey is the founder, President, and CEO of Andes.  Kun-Te Yang allegedly loaned Youtsey amounts totaling $1,142,500.00, memorialized by a spreadsheet signed by Youtsey and dated March 8, 2010.  On March 19, 2015, Kun-Te Yang assigned his rights and interest in the Youtsey loan to Preston Collection Inc., a British Virgin Islands corporation.

As CEO of Andes, Youtsey executed a promissory note payable to Dennis Lan in the amount of $4,700,507.00, plus interest, dated March 11, 2009.  It identifies Andes as the borrower.  On March 19, 2015, Dennis Lan assigned his rights and interest in the note to Devon Investment Inc., a British Virgin Islands corporation.

As CEO/President of Andes, Youtsey executed a promissory note payable to Cheng-Sun Lan ("Mr. Lan") in the amount of $3,000,000.00, plus normal interest and $45,000 bonus interest, dated December 20, 2009.  It identifies Andes as the borrower.  On April 1, 2015, Mr. Lan assigned the note to Crestwood Capital Corporation, a British Virgin Island corporation wholly owned by Mr. Lan.

EZconn Corporation is a Taiwanese corporation with places of business located in Taiwan and the People's Republic of China.  EZconn is owned by eGtran Corporation, a British Virgin Islands corporation with its principal place of business in Taiwan.  EZconn manufactured broadband telecommunications for Andes and PCT International and also for their competitor Holland Electronics, LLC.  Andes and PCT International shared confidential proprietary information with EZconn, which allegedly was disclosed to Holland.  EZconn alleges that during 2012 and 2013, PCT International ordered and received more than $6,600,000.00 worth of product from EZconn that PCT International has not paid for.

### B.    The Collection Actions

On June 26, 2015, EZconn filed a lawsuit against PCT International in Taiwan alleging breach of contract.  On February 24, 2016, EZconn filed a lawsuit against PCT International in this Court, alleging breach of contract, involving the same claims as those in the Taiwanese action.  In order to avoid duplication, the parties agreed that EZconn

- 4 -

would withdraw the Taiwanese action and PCT International would file an answer in the Arizona action. EZconn alleges that PCT International materially breached its contracts with EZconn by failing to pay for all products ordered, received, and accepted by EZconn, including but not limited to specific invoices identified in the Complaint. EZconn seeks an award of damages currently calculated as $6,630,091.57, plus interest and costs. In its Answer, PCT International alleges that "[a]ny claim by EZconn is limited and/or barred, in whole or in part, because those damages are subject to set off" based on Andes and PCT International's claims for breach of contract, fraud, etc.

In actions filed in this Court, Crestwood Capital Corporation sued Andes, Devon Investment Inc. sued Andes, and Preston Collection Inc. sued Youtsey to recover the amounts owed under the promissory notes and acknowledged debt assigned to them by Mr. Lan, Dennis Lan, and Kun-Te Yang respectively. In each of those actions, Andes or Youtsey filed an Answer alleging that any claim for damages "is limited and/or barred, in whole or in part, because those damages are subject to set off" based on Andes and PCT International's claims for breach of contract, fraud, etc.

Under Arizona law, with some exceptions, unless an account debtor has made an enforceable agreement not to assert defenses or claims, the rights of an assignee are subject to:

> 1.      All terms of the agreement between the account debtor and assignor and any defense or claim in recoupment arising from the transaction that gave rise to the contract; and
>
> 2.      Any other defense or claim of the account debtor against the assignor that accrues before the account debtor receives a notification of the assignment authenticated by the assignor or assignee.

A.R.S. § 47-9404(A). However, the claim of an account debtor against an assignor may be asserted against an assignee under this provision only to reduce the amount the account debtor owes. A.R.S. § 47-9404(A).

In summary, EZconn, Crestwood Capital, Devon Investment, and Preston Collection seek to recover from Andes and its CEO, Youtsey, amounts due for loans and unpaid invoices, plus interest and costs. Andes and Youtsey's primary defense is that

EZconn and the parties who assigned the rights to collect on the loans and invoices—Mr. Lan, Dennis Lan, and Kun-Te Yang—are liable for breach of contract, fraud, etc., for wrongful disclosures, for which Andes and Youtsey are entitled to offset.

C.     The Actions for Breach of Contract, Fraud, Etc.

On March 18, 2014, Andes and PCT International sued EZconn, eGtran, Mr. Lan, Kun-Te Yang, Dennis Lan, and Polar Star in the U.S. District Court for the District of Nevada.  When claims against EZconn and eGtran were dismissed for lack of personal jurisdiction, Andes and PCT International brought those claims in a new action in this Court.   Subsequently, the Nevada action against the remaining Defendants was transferred to this Court.

Andes and PCT International allege that they[2] engaged EZconn as a contract manufacturer based on assurances that Mr. Lan and EZconn would protect Andes and PCT International's confidential proprietary information disclosed pursuant to their contractual agreement.  Andes and PCT International also allege that each purchase order they sent to EZconn contained detailed Terms and Conditions regarding protection of their confidential proprietary information.  Andes and PCT International further allege that they provided EZconn and eGtran confidential proprietary information, and this information was disclosed to Holland.  The information allegedly disclosed includes technical design information, the prices at which EZconn offered to manufacture products for Andes and PCT International, quantities of products Andes and PCT International purchased from EZconn, confidential financial information, and information regarding customer orders.  As a result, Holland allegedly was enabled to market and sell infringing products and unfairly compete with Andes and PCT International.  In addition, EZconn

---

[2] The First Amended Complaint alleges that "PCT" engaged EZconn as its contract manufacturer and provided EZconn with confidential proprietary information, and it defines "PCT" as including both Andes and PCT International.  However, the contractual relationship appears to have been formed through purchase orders PCT International issued to EZconn.

allegedly used some of the confidential technical information to develop its own patent applications.   Andes and PCT International allege that these disclosures not only demonstrate breach of contract by EZconn, but numerous torts by EZconn and other Defendants, such as breach of fiduciary duty, fraud, unfair competition, etc.

Mr. Lan, eGtran, and Polar Star moved to dismiss all of Andes and PCT International's claims.  EZconn moved to dismiss all of Andes and PCT International's claims except the breach of contract claim.  EZconn's position is that this is a contract action and only a contract action.

On February 26, 2016, the Court ordered that if Andes and PCT International contend that amendment of their complaint filed in CV-15-02549 can cure any alleged deficiency, they were required to lodge a proposed amended complaint containing all further allegations they could make against Mr. Lan and Polar Star.  (Doc. 55.)  The Court further ordered that in the event that Polar Star's or Mr. Lan's motion to dismiss is granted in any part, no leave would be granted to amend the complaint beyond what was offered in the proposed amended complaint.  (*Id.*)

On March 10, 2016, the Court ordered that if Andes and PCT International contend that amendment of their complaint filed in CV-15-01810 and/or their complaint filed in CV-15-02549 can cure any alleged deficiency, they were required to lodge a proposed amended complaint containing all further allegations they could make against EZconn and eGtran.  (Doc. 71).  They did so (Doc. 72), and the Court will grant leave to file the proposed amended complaint.  Because the First Amended Complaint does not add new claims or parties and the parties moving to dismiss Andes and PCT International's initial complaint responded to the proposed First Amended Complaint in their replies, the motions to dismiss will be deemed motions to dismiss the First Amended Complaint.

## II. SERVICE OF PROCESS ON MR. LAN AND POLAR STAR IS SUFFICIENT.

Mr. Lan and Polar Star seek dismissal under Rule 12(b)(4) and (5) for insufficient process and insufficient service of process.

A federal court lacks personal jurisdiction over a defendant unless the defendant has been served in substantial compliance with Rule 4 of the Federal Rules of Civil Procedure. *Crowley v. Bannister*, 734 F.3d 967, 974–75 (9th Cir. 2013). Although Rule 4 should be liberally construed if the defendant receives sufficient notice of the complaint, "substantial compliance" requires more than actual notice or simply naming the defendant in the caption of the complaint. *Id.* at 975.

> "[S]ervice of summons is the procedure by which a court having venue and jurisdiction of the subject matter of the suit asserts jurisdiction over the person of the party served." *Mississippi Publ'g Corp. v. Murphree,* 326 U.S. 438, 444–445 (1946). Thus, before a court may exercise personal jurisdiction over a defendant, there must be more than notice to the defendant and a constitutionally sufficient relationship between the defendant and the forum. There also must be a basis for the defendant's amenability to service of summons. Absent consent, this means there must be authorization for service of summons on the defendant.

*Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987).

Polar Star was served in care of its registered agent in the British Virgin Islands on July 24, 2014. (Doc. 67, CV-15-02549.) The summons and complaint identified Polar Star by the correct name, but the complaint described Polar Star as a Taiwanese corporation instead of a British Virgin Islands corporation. Polar Star contends that correctly identifying the location of incorporation is essential to the sufficiency of process. But there was no confusion about whether Polar Star was the entity named as a defendant in the complaint. And Polar Star does not dispute that service was made upon its agent who was authorized to accept service. Thus, Polar Star was served in substantial compliance with Rule 4.

Mr. Lan and Polar Star also contend that service upon them was ineffective because their summonses were issued by the U.S. District Court for the District of

Nevada before the case was transferred.  They contend they must be served again with summonses issued by this Court.  However, they rely on cases requiring that defendants be re-served after transfer under 28 U.S.C. § 1406(a) where the transferor court lacked personal jurisdiction over the defendants.  *See McCurdy v. Am. Bd. of Plastic Surgery*, 157 F.3d 191, 195 (3d Cir. 1998); *Cornelius v. DeLuca*, 709 F. Supp. 2d 1003, 1009 (D. Idaho 2010); *Wilson v. St. Mary's Hosp.*, 822 F. Supp. 1450, 1451 (D. Minn. 1993).  If a civil action is filed in the wrong district or division, § 1406(a) requires the district court to either dismiss the action or transfer it to any district or division in which it could have been brought.  In the cases cited by Mr. Lan and Polar Star, venue was improper, the transferor court lacked personal jurisdiction over the defendant served, the service issued by the transferor court was deemed ineffective, and re-service was required.  Here, however, the transferor court expressly found venue to be proper both in Nevada and in Arizona and granted a motion to transfer pursuant to 28 U.S.C. § 1404(a).  (Doc. 99 at 4.)

Under § 1404(a), a civil action may be transferred for the convenience of parties and witnesses, in the interest of justice, to any other district or division where it might have been brought or to any district or division to which all parties have consented.  Polar Star was served with process on July 24, 2014, and Mr. Lan was served on November 23, 2015.  On December 14, 2015, Judge Andrew P. Gordon, District Judge for the U.S. District Court for the District of Nevada, granted Andes and PCT International's motion to transfer under § 1404(a) despite opposition by EZconn and eGtran.  Judge Gordon found that the factors identified in *Jones v. GNC Franchising, Inc.*, favored transfer of this case to Arizona.  211 F.3d 495, 498-99 (9th Cir. 2000) (identifying factors guiding a court's discretion to transfer a case under § 1404(a)).  He also found that venue was proper in Nevada because venue is proper in "any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action" where all defendants are not residents of Nevada and a substantial part of the events giving rise to the claim did not occur in Nevada.  (Doc. 99 at 3-4, quoting 28 U.S.C. § 1391(b)(3).)  Judge Gordon expressly found that Defendants Kun-Te Yang, Dennis Lan, and Polar Star

had consented to jurisdiction in Nevada and Arizona as shareholders of Andes. Therefore, venue in Nevada was proper.  Subject matter jurisdiction is not disputed.

"[S]ervice of summons is the procedure by which a court having venue and jurisdiction of the subject matter of the suit asserts jurisdiction over the person of the party served."  *Mississippi Publ'g Corp.*, 326 U.S. at 444–445.  Service of process issued by the U.S. District Court for the District of Nevada, having venue and subject matter jurisdiction, was therefore effective.  Neither Mr. Lan nor Polar Star must be re-served.

## III.   THE COURT HAS SPECIFIC PERSONAL JURISDICTION OVER THE CLAIMS ALLEGED AGAINST MR. LAN AND POLAR STAR.

Mr. Lan and Polar Star seek dismissal under Rule 12(b)(2) for lack of personal jurisdiction.

### A.   Legal Standard

The burden to establish personal jurisdiction rests on the plaintiff, but if the motion attacking jurisdiction is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts. *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011).  Although bare allegations are not sufficient, uncontroverted allegations in the complaint must be taken as true.  *Id.*  Conflicts between statements contained in affidavits must be resolved in the plaintiff's favor.  *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).

Where there is no applicable federal statute governing personal jurisdiction, the district court applies the law of the state in which the court sits.  *Id.*  Arizona permits its courts to exercise personal jurisdiction "to the maximum extent permitted by . . . the Constitution of the United States."   Ariz. R. Civ. P. 4.2(a); *see A. Uberti & C. v. Leonardo*, 181 Ariz. 565, 569, 892 P.2d 1354, 1358 (1995).  The Constitution permits a court to exercise personal jurisdiction over a nonresident defendant if the defendant has at least "minimum contacts" with the forum State such that the exercise of jurisdiction

1   "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v.*

2   *Washington*, 326 U.S. 310, 316 (1945); *accord Mavrix*, 647 F.3d at 1223.

3        Personal jurisdiction can be either specific or general. *Picot v. Weston*, 780 F.3d

4   1206, 1211 (9th Cir. 2015). A court may exercise general jurisdiction over a nonresident

5   defendant when the defendant's affiliations with the State are so continuous and

6   systematic that the defendant is "essentially at home" in the forum State. *Mavrix*, 647

7   F.3d at 1223. "This is an exacting standard, as it should be, because a finding of general

8   jurisdiction permits a defendant to be haled into court in the forum state to answer for any

9   of its activities anywhere in the world." *Schwarzenegger*, 374 F.3d at 801.

10       When a plaintiff relies on specific personal jurisdiction, the plaintiff must establish

11  that jurisdiction is proper for each claim asserted against the defendant. *Picot*, 780 F.3d

12  at 1211. If personal jurisdiction exists over one claim, the court may exercise pendent

13  personal jurisdiction over other claims that arise out of the same core facts. *Id.* To

14  decide whether a defendant is subject to specific personal jurisdiction, the Ninth Circuit

15  applies a three-part test:

16       (1) The non-resident defendant must purposefully direct his activities or
         consummate some transaction with the forum or resident thereof; or
17       perform some act by which he purposefully avails himself of the privilege
         of conducting activities in the forum, thereby invoking the benefits and
18       protections of its laws;

19       (2) the claim must be one which arises out of or relates to the defendant's
20       forum-related activities; and

21       (3) the exercise of jurisdiction must comport with fair play and substantial
22       justice, *i.e.*, it must be reasonable.

23  *Id.* (quoting *Schwarzenegger*, 374 F.3d at 802). The plaintiff must prove the first two

24  parts. *Id.* If he does so, the burden shifts to the defendant to show why the exercise of

25  jurisdiction is not reasonable. *Id.* at 1212.

26       For a defendant to be subject to specific jurisdiction, "the defendant's suit-related

27  conduct must create a substantial connection with the forum State." *Walden v. Fiore*, __

28  U.S. __, 134 S. Ct. 1115, 1121 (2014). A "substantial connection" between the defendant

and the State must arise out of contacts that the defendant himself creates with the forum State. *Id.* at 1122. And the contacts to be considered are those with the forum State itself, not merely with persons who reside there. *Id.* "[A] defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction." *Id.* at 1123.

To determine specific jurisdiction over contract claims, the inquiry is whether the defendant purposely availed himself of the privilege of conducting activities within the forum State, thereby invoking the benefit and protection of its laws. *Picot*, 780 F.3d at 1212. "Purposeful availment" consists of more than merely random or attenuated contacts with the State. *Id.* It requires affirmative conduct by the defendant that allows or promotes the transaction of business within the forum State. *Id.* Thus, a defendant's contract with an out-of-state party does not, by itself, automatically confer jurisdiction in that party's State. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985); *see also Walden*, 134 S. Ct. at 1122-23. On the other hand, jurisdiction is proper over defendants who "purposefully 'reached out beyond' their State into another by, for example, entering a contractual relationship that 'envisioned continuing and wide-reaching contacts' in the forum State." *Walden*, 134 S. Ct. at 1122 (quoting *Burger King*, 471 U.S. at 479-80).

For tort claims, the inquiry is whether the defendant purposely directed his actions at the forum State, regardless of where the actions took place. *Picot*, 780 F.3d at 1212. "Purposeful direction" occurs where the defendant "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Id.* at 1214. "[A]n intentional act is an external manifestation of the actor's intent to perform an actual, physical act in the real world, not including any of its actual or intended results." *Washington Shoe Co. v. A-Z Sporting Goods Inc.*, 704 F.3d 668, 674 (9th Cir. 2012). "Express aiming" exists "when the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state." *Id.* at 675. But "mere injury to a forum resident is not a sufficient connection to the forum." *Picot*, 780 F.3d at 1214

(quoting *Walden*, 134 S. Ct. at 1125)).  "[A]n injury is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum State."  *Id.*

**B.     Mr. Lan**

On December 18, 2009, Steven Youtsey as CEO/President of Andes Industries, Inc., executed a "12% Promissory Note plus bonus interest" on behalf of Andes.  The note is dated December 20, 2009, and identifies Andes as the borrower and Mr. Lan as the payee.  The December 20, 2009 Note requires a total payment of $3,135,000.00 due in full on March 20, 2010.  It states that it "shall be governed, construed and interpreted by, through and under the Laws of the State of Arizona."  (Doc. 1-1 at 4; Doc. 30 at 2-3.)  Mr. Lan is the 100 percent equity owner of Crestwood Capital Corporation.  (Doc. 29 at 53.)  On April 1, 2015, Mr. Lan assigned all of his rights, title, and interest in the December 20, 2009 Promissory Note to Crestwood to recover and collect all amounts due under or arising from enforcement of the December 20, 2009 Promissory Note.  (Doc. 1 at 3.)  Two days later, on April 3, 2015, Crestwood filed an action in this Court to recover the money that Andes borrowed from Mr. Lan, plus interest, costs, and attorneys' fees.  (Doc. 1.)

Mr. Lan is subject to personal jurisdiction in this Court on the claims asserted.  First, under A.R.S. § 47-9404(A), all the claims asserted against Mr. Lan could be litigated up to full recoupment in Crestwood's collection action whether or not he is subject to personal jurisdiction in Arizona.  Second, Mr. Lan would be subject to any counterclaim to the full extent of the claim by bringing an action on his note in this state.  Fed. R. Civ. P. 13(b).  He cannot escape that jurisdiction by endorsing his note to himself in the form of his wholly owned corporation two days before filing the action.  Rule 13(b) is not so easily evaded to the prejudice of the party Mr. Lan has sued in this Court through his wholly owned corporation.

Third, apart from Rule 13(b), Mr. Lan's suit-related conduct created a substantial connection with the State of Arizona to the extent of claims against him arising out of the same transaction or occurrence or series of transactions or occurrences as his collection

action.  By filing an action in this Court to collect on a promissory note through a nominee without economic interest apart from his own, Mr. Lan purposely availed himself of the privilege of conducting activities within the forum State, thereby invoking the benefit and protection of its laws.  Further, Mr. Lan allegedly "negotiate[d] loan agreements with PCT by which he obtained, directly or indirectly, promissory notes and security interests in Andes stock and PCT's valuable intellectual property," obtained confidential proprietary information, and disclosed PCT's intellectual property and confidential proprietary information to competitors.  These are intentional acts expressly aimed at a plaintiff whom the defendant knows to be a forum resident.  Therefore, the Court has personal jurisdiction over Mr. Lan.

## C.    Polar Star

On August 1, 2000, New Elite Technologies, Inc., a Taiwanese company, received 1,250,000 shares of Andes stock through a Stock Exchange Agreement.  The Agreement states that Steven Youtsey and New Elite Technologies, Inc., were all of the shareholders of OptiSolutions, Inc., an Arizona corporation, and that Youtsey, Kun-Te Yang, Goldman Financial, LLC, Ronald Clark, Wade Ferguson, and Roger and Sybil Ferguson were all of the shareholders of PCT International, a Nevada corporation.  It further states that the PCT International shareholders and the OptiSolutions shareholders wish to transfer all of their respective PCT International and OptiSolutions stock to Andes in exchange for common stock in Andes, resulting in PCT International and OptiSolutions becoming wholly owned subsidiaries of Andes.  It acknowledges that Andes is intended to be a holding company of PCT International and OptiSolutions, Inc.

The Agreement further states, "All parties consent and agree to the jurisdiction of the state and federal courts in Maricopa County, Arizona, but an action hereunder may be brought in any forum having jurisdiction."  (Doc. 125-5 at 8.)  It also states:  "This Agreement shall be binding on and inure to the benefit of the parties and their respective successors.  No party may assign any right or obligation hereunder without the prior express written approval of Andes."  (*Id.*)

On June 29, 2004, New Elite Technologies, Inc., merged with Infomax Optical Technology Corp., another Taiwanese company, and the new company was named Infomax Optical Technology Corp.  (Doc. 125-4.)  On May 4, 2009, Infomax Optical Technology Corp. sold its shares in Andes to Polar Star Management Limited.  (Doc. 125-3.)  On May 31, 2010, Andes issued a certificate showing Polar Star Management Limited as the owner of 1,250,000 shares of Andes common stock, apparently all of the stock originally issued under the Stock Exchange Agreement to New Elite Technologies, Inc.  (Doc. 125-2.)

Polar Star contends that its "arms-length" purchase of stock from Infomax does not make it a successor to Infomax, and therefore it is not bound by the August 1, 2000 Stock Exchange Agreement.  But the terms of the Agreement suggest otherwise.  The Agreement creates Andes as a holding company of PCT International and OptiSolutions, Inc.  It issued Andes stock to only the shareholders of PCT International and OptiSolutions, Inc.  The Andes stock issued under the Agreement represented 100% of Andes' outstanding stock as of the Agreement's effective date.  It states that Andes stock is not registered, will be restricted stock, and will be subject to the transfer restrictions and purchase options and obligations set forth in the Bylaws for Andes.  It also states, "The shares to be received by each Shareholder are being acquired for investment and not, directly or indirectly, with a view to, or in connection with, the distribution or resale of such shares."  (Doc. 125-5 at 5.)  Further, it prohibits assignment of any right or obligation without the prior express written approval of Andes.  Polar Star could not have acquired Andes stock without permission from Andes and compliance with its Bylaws. The rights and obligations of New Elite Technologies, Inc., as an owner and investor in Andes were assumed by Polar Star when it acquired the stock.  Polar Star is therefore bound by New Elite Technologies, Inc.'s consent to "the jurisdiction of the state and federal courts in Maricopa County, Arizona."[3]

---

[3] Polar Star's contention that the present lawsuit is not "an action hereunder" the Stock Exchange Agreement confuses jurisdiction with forum selection.  Under the

Therefore, the Court has personal jurisdiction over Polar Star based on consent.

## IV.   THE FIRST AMENDED COMPLAINT STATES TWO CLAIMS FOR WHICH RELIEF CAN BE GRANTED—BREACH OF CONTRACT AND BREACH OF THE IMPLIED DUTY OF GOOD FAITH AND FAIR DEALING.

EZconn moves for dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure of all claims pled against it except Count IV, which alleges breach of contract solely against EZconn.  Polar Star, Mr. Lan, and eGtran move under Rule 12(b)(6) for dismissal of all claims pled against them.

Count V alleges intentional interference by Mr. Lan and eGtran with the contractual relationship between PCT International and EZconn.  Count VII alleges fraud against Mr. Lan, EZconn, and eGtran.  Count IX alleges breach of the implied duty of good faith and fair dealing against EZconn and eGtran.  The remaining counts, I, II, III, VI, VIII, X, XI, and XII, allege claims against all Defendants.

Counts I, II, III, VI, VIII, X, XI, and XII could be dismissed for failing to give each Defendant fair notice of what the claim is and the grounds upon which it rests.  *See* Fed. R. Civ. P. 8(a); *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).  A claim must be stated clearly enough to provide each defendant fair opportunity to frame a responsive pleading.  *McHenry v. Renne*, 84 F.3d 1172, 1176 (9th Cir. 1996).  "Something labeled a complaint . . ., yet without simplicity, conciseness and clarity as to whom plaintiffs are suing for what wrongs, fails to perform the essential functions of a complaint."  *Id.* at 1180.  However, these claims also fail to state a claim upon which relief can be granted and will be dismissed under Rule 12(b)(6).

---

Agreement, the parties consented to "the jurisdiction of the state and federal courts in Maricopa County, Arizona," and also agreed that any action arising under the Agreement could be litigated in any forum having jurisdiction.

## A.     Legal Standard

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the plaintiff's pleadings.   All allegations of material fact are assumed to be true and are construed in the light most favorable to the nonmoving party.  *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009).  Dismissal under Rule 12(b)(6) can be based on "the lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  To avoid dismissal, a complaint need contain only "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The principle that a court accepts as true all of the allegations in a complaint does not apply to legal conclusions or conclusory factual allegations.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

In deciding a motion to dismiss under Rule 12(b)(6), "[a] court may consider evidence on which the complaint 'necessarily relies' if:  (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006).  Here, the parties submitted declarations and other evidence to be considered regarding personal jurisdiction, but the Court has not considered materials outside the pleadings to decide whether the First Amended Complaint states a claim upon which relief can be granted.

## B.     The First Amended Complaint Fails to State Any Claim Against Polar Star.

The First Amended Complaint affirmatively alleges that Polar Star did nothing.  It alleges that no representative of Polar Star ever visited Andes and PCT International's

facilities or directly interacted with Andes and PCT International.  It alleges that all of Polar Star's communications with Andes and PCT International have come through Mr. Lan and representatives of EZconn and/or eGtran, but it does not allege that Polar Star actually had any communications with Andes and PCT International.  It alleges that Polar Star is a shareholder of Andes, but only as a proxy for Mr. Lan.  It alleges that all actions with respect to Polar Star's shareholder interest have been directed and controlled by Mr. Lan.  It alleges that Andes has not held formal shareholder meetings or elections, and most substantial business decisions for Andes and PCT International were addressed through communications between Mr. Lan and Youtsey.  It alleges that Mr. Lan directed and controlled the actions of Polar Star, but it does not allege any wrongful actions that Mr. Lan caused Polar Star to take.   Moreover, Andes and PCT International's characterization of Polar Star as a "corporate insider," privy to confidential financial and other information through its shareholder status, is contradicted by their allegations that Polar Star had no interaction with Andes and PCT International.

Counts I, II, III, VI, VIII, X, XI, and XII are the only claims that apply to Polar Star, they do not allege any actions taken specifically by Polar Star, and they make only conclusory factual allegations inconsistent with facts pled regarding Polar Star.  Count I for breach of fiduciary duty alleges that Defendants "entered into special, confidential relationships with [Andes and PCT International] as integrally involved corporate insiders of [Andes and PCT International]."  Polar Star could not have been "integrally involved" without any communication or interaction with Andes and PCT International, without any shareholder meetings, and without participation in substantial business decisions.   Count II alleges "Defendants each provided substantial assistance and knowingly participated in breaches of fiduciary duty committed by the other Defendants," but as pled, Polar Star did not do anything, much less provide substantial assistance to anyone.  Count III alleges Polar Star and the other Defendants owed a duty to maintain confidentiality of certain information, but there was no alleged communication between Polar Star and PCT International, or anyone else, from which

Polar Star could have obtained confidential proprietary information, and no alleged action taken by Polar Star that could be construed as usurpation of corporate opportunities. Counts VI, VIII, X, XI, and XII fare no better. The First Amended Complaint alleges, in essence, that Polar Star is a repository for Mr. Lan's ownership interest, and nothing more.

Therefore, all claims against Polar Star will be dismissed.[4]

## C. The First Amended Complaint Does Not Allege Facts Supporting Any Alter Ego Liability for Any Defendant.

It is undisputed that EZconn manufactured products for PCT International, PCT International did not pay for all of the products it received, and Andes did not repay certain loans it received from Mr. Lan, Kun-Te Yang, Dennis Lan.[5] Andes and PCT International contend they are not legally liable for the unpaid invoices and loans because EZconn wrongful disclosed and misused Andes and PCT International's confidential proprietary information. They seek to offset damages they may obtain for EZconn's actions against the amount PCT International owes to EZconn and also against Andes' debt to Mr. Lan, Dennis Lan, and Kun-Te Yang. Andes and PCT International seek to impose liability for EZconn's actions on Mr. Lan, Dennis Lan, and Kun-Te Yang by characterizing Mr. Lan as "the mastermind" and all of the Defendants as indistinguishable alter egos of each other:

> As PCT has alleged, Mr. Lan directed and controlled the operations of each of the other Defendants who also committed the identified wrongful

---

[4] The First Amended Complaint pleads the same allegations regarding Kun-Te Yang and Dennis Lan as it pleads regarding Polar Star, *i.e.*, they hold Mr. Lan's shareholder interest in Andes as his proxies and have had no direct interaction or communication with Andes and PCT International. Andes and PCT International initiated service on Kun-Te Yang and Dennis Lan through the letters rogatory process and had not received proof of service as of March 4, 2016. Kun-Te Yang and Dennis Lan have not appeared in this Court and have not joined in the present motions to dismiss.

[5] Whether the loan from Kun-Te Yang was made to Youtsey personally or on behalf of Andes and PCT International is disputed.

1
2
3

> conduct.  Thus, each Defendant's wrongdoing is attributable to Mr. Lan.
> Indeed, PCT alleges that each defendant functioned as Mr. Lan's alter ego.
> Accordingly, the Complaint details an interwoven scheme to harm PCT,
> with Mr. Lan as the mastermind.

4

(Doc. 73 at 8.)

5

The First Amended Complaint alleges that Mr. Lan was "the mastermind of the

6

harm" to Andes and PCT International, directing and controlling all of the other

7

Defendants and acting through the other Defendants.  (Doc. 72 at 7.)  It alleges that Kun-

8

Te Yang, Dennis Lan, Polar Star, EZconn, and eGtran each functioned as "Mr. Lan's

9

proxy and alter ego," and eGtran also functioned as an alter ego of EZconn.

10

The First Amended Complaint alleges that Mr. Lan acted through the other

11

Defendants to wrongfully seize control over the intellectual property, confidential

12

information, and business of Andes and PCT International, in which the Defendants own

13

a minority interest, and divert profits to EZconn, a company in which, at relevant times,

14

Defendants have owned a controlling majority interest.  It alleges the other Defendants

15

acted under Mr. Lan's direction and control, abusing their positions as suppliers,

16

fiduciaries, and shareholders of Andes and PCT International.  It also alleges that Mr.

17

Lan was a *de facto* shareholder of Andes, but directed that his shareholder interest be held

18

by Kun-Te Yang, Dennis Lan, and Polar Star, each of whom functioned as Mr. Lan's

19

proxy and alter ego.   The First Amended Complaint further alleges that Mr. Lan

20

participated in meetings of Andes' Board of Directors and was involved in substantial

21

business decisions for Andes and PCT International through persons he identified to act

22

on his behalf, including Kun-Te Yang, Dennis Lan, Polar Star, and employees and

23

executives of EZconn and eGtran.

24

Thus, the First Amended Complaint alleges that Mr. Lan is liable for the

25

wrongdoing of each of the other Defendants because each Defendant functioned as Mr.

26

Lan's alter ego.  It also alleges that each of the other Defendants is liable for Mr. Lan's

27

actions because each Defendant functioned as Mr. Lan's alter ego.

28

### 1.    Mr. Lan's Alter Ego Liability for EZconn and eGtran

The term "alter ego" is used in the context of "piercing the corporate veil" to impose liability on an individual for the actions of a corporation:

> As a general rule, a corporation will be treated as a legal entity until sufficient reason appears to disregard the corporate form.  The corporate fiction will be disregarded when the corporation is the alter ego or business conduit of a person, and when to observe the corporation would work an injustice.  The alter-ego status is said to exist when there is such unity of interest and ownership that the separate personalities of the corporation and owners cease to exist.

> Where a corporation is operated and maintained for the purpose for which it was incorporated and not as a mere shield of the stockholders, the corporate form should not be disregarded.  If a corporation was formed or is employed for fraudulent purposes then clearly the corporate fiction should be disregarded.  . . .  But it must be noted that a legitimate purpose of incorporation is to avoid personal liability and if the corporate fiction is too easily ignored and personal liability imposed, then incorporation is discouraged.  If there is no unification of interests and intermingling of funds, so that the corporation loses its separate identity, then the owners should not be personally liable.

*Dietel v. Day*, 16 Ariz. App. 206, 208, 492 P.2d 455, 457 (1972) (citations omitted).  Corporate directors and officers are not personally liable for torts committed by the corporation unless they have participated in the tort or were negligent in the management or supervision of the corporate affairs causing or contributing to the injury.  *Bischofshausen, Vasbinder, & Luckie v. D.W. Jaquays Min. & Equip. Contractors Co.*, 145 Ariz. 204, 210-11, 700 P.2d 902, 908-09 (Ct. App. 1985).

The First Amended Complaint alleges that, at times relevant to this action, Mr. Lan owned or controlled, directly or indirectly, EZconn and eGtran.  It alleges that EZconn functioned as an alter ego of Mr. Lan and of eGtran, and eGtran owned and controlled EZconn.  It further alleges that Mr. Lan was part of eGtran's executive management and served as a Senior Vice President of the company, and eGtran functioned as an alter ego of Mr. Lan and EZconn.  It vaguely alleges that Mr. Lan

"intermingled his business dealings with those of eGtran and EZconn," but it does not allege that Mr. Lan intermingled his personal funds with those of eGtran and EZconn.

The First Amended Complaint does not allege facts showing such unity of interest and ownership between Mr. Lan and EZconn or Mr. Lan and eGtran that the separate personalities of the corporation and owners ceased to exist. It does not allege facts showing that EZconn or eGtran operated as a shield for Mr. Lan rather than for the purpose for which either was incorporated. It does not allege facts showing that Mr. Lan's personal funds were intermingled with those of either EZconn or eGtran. It does not allege that either EZconn or eGtran failed to observe corporate formalities. The First Amended Complaint does not allege facts necessary to impose alter ego liability on Mr. Lan for the actions of EZconn or eGtran.

### 2. Mr. Lan's Alter Ego Liability for Kun-Te Yang, Dennis Lan, and Polar Star

The First Amended Complaint seeks to stretch application of alter ego liability from personal liability for corporate actions to personal liability for actions of another individual and to avoid reliance on a theory of vicarious, respondeat superior, or agency liability. Andes and PCT International offer no authority to support such an expansion of alter ego liability. In fact, they acknowledge that they have pled alternative claims because their allegations of alter ego liability may fail. But even if alter ego liability could be imposed on Mr. Lan for the actions of other individuals, the First Amended Complaint does not allege facts suggesting such unity of interest and ownership that the separate personalities ceased to exist. *See Dietel*, 16 Ariz. App. at 208, 492 P.2d at 457.

The First Amended Complaint alleges that Andes shareholders Kun-Te Yang, Dennis Lan, and Polar Star acted as Mr. Lan's proxies and under his control. It alleges they were "corporate insiders" and caused Andes and PCT International harm. But the First Amended Complaint also alleges that Kun-Te Yang, Dennis Lan, and Polar Star never visited PCT International's facilities and never directly interacted with Andes and PCT International. It alleges that Andes did not hold shareholder meetings. It alleges

that most substantial business decisions for PCT were addressed through communications between Mr. Lan and Mr. Youtsey.  It does not allege that Kun-Te Yang, Dennis Lan, and Polar Star actually did anything.  Therefore, the First Amended Complaint does not plausibly allege that any of the shareholders committed any wrongdoing for which Mr. Lan could be liable, and even if it did, Mr. Lan would not be liable for them as his alter egos.

### 3.    eGtran's Alter Ego Liability for EZconn

A parent corporation may be held liable for the acts of its subsidiary when the individuality or separateness of the subsidiary corporation has ceased.  *Gatecliff v. Great Republic Life Ins. Co.*, 170 Ariz. 34, 37, 821 P.2d 725, 728 (1991).  To establish such liability, "plaintiffs must prove both (1) unity of control and (2) that observance of the corporate form would sanction a fraud or promote injustice."  *Id.*  "Substantially total control may be proved by showing, among other things:  stock ownership by the parent; common officers or directors; financing of subsidiary by the parent; payment of salaries and other expenses of subsidiary by the parent; failure of subsidiary to maintain formalities of separate corporate existence; similarity of logo; and plaintiff's lack of knowledge of subsidiary's separate corporate existence."  *Id.*  "To be held responsible for actions of its subsidiary, a parent must actually exercise control such that the subsidiary is 'a mere instrumentality.'"  *Keg Rests. Ariz., Inc. v. Jones*, No. 1 CA-CV 15-0054, 2016 WL 3101794, at *8 (Ariz. Ct. App. June 2, 2016).  The key is failure to maintain the formalities or the financial distinctness of separate corporations.

The First Amended Complaint alleges that "eGtran owned and controlled EZconn, and directed and controlled the actions of EZconn herein."  (Doc. 72 at 9.)  It further alleges that eGtran and EZconn share or shared multiple common officers and directors. It does not allege facts showing that EZconn failed to maintain formalities of separate corporate existence, only that after eGtran acquired EZconn, the Chairman of the Board of eGtran approved invoices for PCT International's purchases from EZconn and requested those payments be directed to him and that EZconn personnel began using

- 23 -

email addresses with an "@egtran.com" suffix. Such limited and vague allegations do not show that the individuality or separateness of the subsidiary corporation had ceased. They are insufficient to impose liability on eGtran for the actions of EZconn.

Thus, the First Amended Complaint fails to allege facts showing that any Defendant should be held liable for the actions of another Defendant as an alter ego.

### D.    Count IV:  Breach of Contract (Against EZconn)

The First Amended Complaint alleges that the contractual manufacturing relationship between PCT International and EZconn required PCT International to disclose certain information to EZconn, such as quantities of items PCT International ordered from EZconn, the prices PCT International paid EZconn for those items, and other information about customer orders.  It further alleges that EZconn disclosed this information to one of PCT International's competitors for which EZconn also manufactured similar products.  As alleged, the Terms and Conditions included in PCT International's purchase orders prohibit EZconn from discussing orders with any third party.

Count IV alleges EZconn breached its obligations under contracts between PCT International and EZconn by, among other things:

a.    Wrongfully using [Andes and PCT International] "items, materials, data, technical information, [] intellectual property," and other property for their own benefit;

b.    Using [Andes and PCT International]'s property for purposes other than production or delivery of products manufactured for [Andes and PCT International];

c.    Using [Andes and PCT International]'s materials and intangibles for the benefit of parties other than [Andes and PCT International];

d.    Reproducing [Andes and PCT International]'s property, including materials, data, technical information, and intellectual property without [Andes and PCT International]'s prior written authorization; and

e.    Claiming right, title, and interest to inventions utilizing [Andes and PCT International]'s intellectual property.

(Doc. 72 at 27-28.)

1    Count IV alleges a breach of contract claim only against EZconn, and EZconn

2    does not move to dismiss Count IV.  Therefore, Count IV remains, but it applies only to

3    EZconn.

4        **E.    Count IX:  Breach of Implied Duty of Good Faith and Fair Dealing**
         **(Against EZconn and eGtran)**

5

6        Arizona law implies a covenant of good faith and fair dealing in every contract.

7    *Rawlings v. Apodaca*, 151 Ariz. 149, 153, 726 P.2d 565, 569 (1986).  The essence of the

8    implied covenant is "neither party will act to impair the right of the other to receive the

9    benefits which flow from their agreement or contractual relationship."  *Id.*  "[A]n implied

10   covenant of good faith and fair dealing cannot directly contradict an express contract

11   term."  *Bike Fashion Corp. v. Kramer*, 202 Ariz. 420, 424, 46 P.3d 431, 435 (Ct. App.

12   2002).  But a party can exercise discretion retained or unforeclosed under a contract in

13   such a way as to deny the other a reasonably expected benefit of the bargain.  *Id.*

14   Therefore, "Arizona law recognizes that a party can breach the implied covenant of good

15   faith and fair dealing both by exercising express discretion in a way inconsistent with a

16   party's reasonable expectations and by acting in ways not expressly excluded by the

17   contract's terms but which nevertheless bear adversely on the party's reasonably

18   expected benefits of the bargain."  *Id.*  Further, "a party may breach the implied covenant

19   of good faith and fair dealing even if the express terms of the contract speak to a related

20   subject."  *Id.*

21       An action for breach of the implied covenant of good faith and fair dealing may be

22   brought in contract or in tort.  An action in tort may be brought only where there is a

23   "special relationship between the parties arising from elements of public interest,

24   adhesion, and fiduciary responsibility."  *Wells Fargo Bank v. Ariz. Laborers, Teamsters*

25   *& Cement Masons Local No. 395 Pension Trust Fund*, 201 Ariz. 474, 491, 38 P.3d 12, 29

26   (2002).  But when the remedy sought sounds in contract, the plaintiff is not required to

27   prove the existence of a special relationship.  *Id.*

28

1    Count IX alleges that EZconn and eGtran owed PCT International a duty of good

2    faith and fair dealing because EZconn was a party to contracts with PCT International

3    and eGtran was the alter ego of EZconn.   It further alleges that EZconn and eGtran

4    breached their duties of good faith and fair dealing owed to PCT International by "the

5    wrongful and illegal conduct alleged herein."   (Doc. 72 at 35.)   In addition, Count IX

6    alleges that EZconn and eGtran had a special, confidential relationship with Andes and

7    PCT International.   In response to the motions to dismiss, Andes and PCT International

8    state that they plead this claim for breach of the implied duty of good faith and fair

9    dealing in the alternative to their claim against EZconn for breach of contract.

10    The First Amended Complaint does not allege any facts showing that either

11    EZconn or eGtran had a special relationship with Andes and PCT International.

12    However, the First Amended Complaint does not seek tort damages, and Andes and PCT

13    International do not need to establish a special relationship to state a claim for breach of

14    the implied covenant of good faith and fair dealing.

15    The First Amended Complaint does not allege that eGtran was a party to any

16    contract from which an implied duty of good faith and fair dealing could arise.   Other

17    than alter ego liability, Andes and PCT International allege no basis for imposing liability

18    on eGtran for EZconn's alleged breach of the implied covenant of good faith and fair

19    dealing.   As already found, the First Amended Complaint does not adequately plead alter

20    ego status between EZconn and eGtran.

21    The First Amended Complaint alleges that EZconn breached its contract with PCT

22    by wrongfully disclosing PCT's confidential proprietary information in violation of

23    express Terms and Conditions incorporated in their purchase orders and by other actions.

24    It also alleges that PCT shared information with EZconn that EZconn secretly used to

25    apply for patents.   If the alleged disclosures were not related to specific purchase orders,

26    the Terms and Conditions may not expressly prohibit EZconn's actions.   To the extent

27    that EZconn's allegedly wrongful actions are not expressly excluded by the contract's

28    terms but "nevertheless bear adversely on [EZconn's] reasonably expected benefits of the

bargain," the First Amended Complaint sufficiently alleges a claim for breach of the implied duty of good faith and fair dealing against EZconn.

Therefore, Count IX will be dismissed as to eGtran, but not with respect to EZconn.

## F. Count V: Intentional Interference with Contract (Against Mr. Lan and eGtran)

To prove intentional inference with contract, a plaintiff must prove:

> (1) existence of a valid contractual relationship, (2) knowledge of the relationship on the part of the interferor, (3) intentional interference inducing or causing a breach, (4) resultant damage to the party whose relationship has been disrupted, and (5) that the defendant acted improperly.

*Safeway Ins. Co. v. Guerrero*, 210 Ariz. 5, 10, 106 P.3d 1020, 1025 (2005).  The "valid contractual relationship" must be between the plaintiff and a third party; a party cannot tortiously interfere with its own contract.  *Payne v. Pennzoil Corp.*, 138 Ariz. 52, 57, 672 P.2d 1322, 1327 (1983); Restatement (Second) of Torts § 766 (1979) (defining cause of action for interfering with the performance of a contract "between another and a third person").

Count V alleges that Mr. Lan and eGtran interfered with the contract between PCT International and EZconn by exercising control over EZconn to breach its contractual obligation for Mr. Lan's and eGtran's gain.  Andes and PCT International acknowledge that if EZconn is determined to be the alter ego of Mr. Lan and eGtran, they are not third parties to the contract and cannot interfere with their own contract.  But Count V fails even after alter ego status has been rejected.  It alleges nothing more than that a corporate officer and a parent corporation are liable for the breaches of contract in which they had a role.  Therefore, Count V will be dismissed as to Mr. Lan and eGtran.

### G.   Count I:  Breach of Fiduciary Duty (Against All Defendants)
### Count II:  Aiding and Abetting a Breach of Fiduciary Duty (Against All Defendants)

"A fiduciary relation exists between two persons when one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation."   Restatement (Second) of Torts § 874 cmt. a (1979).   A fiduciary relationship is a confidential relationship in which the fiduciary holds superiority of position over the beneficiary, which may be demonstrated by a substitution of the fiduciary's will for that of the beneficiary.   *Standard Chartered PLC v. Price Waterhouse*, 190 Ariz. 6, 24, 945 P.2d 317, 335 (Ct. App. 1997).   It requires "peculiar reliance in the trustworthiness of another," which is more than mere trust in another's competence or integrity.   *Id.*

"Purely commercial transactions do not give rise to a fiduciary relationship." *Urias v. PCS Health Sys., Inc.*, 211 Ariz. 81, 87, 118 P.3d 29, 35 (Ct. App. 2005) (citation omitted).   "A commercial contract creates a fiduciary relationship only when one party agrees to serve in a fiduciary capacity." *Id.*

A corporation's director owes a fiduciary duty to the corporation and its stockholders.   *Atkinson v. Marquart*, 112 Ariz. 304, 306, 541 P.2d 556, 558 (1975).   A fiduciary duty may exist among shareholders with equal ownership in a closely held corporation.   *E.g.*, *Hollis v. Hill*, 232 F.3d 460, 466 (5th Cir. 2000) (shareholders were directors, participated personally in the corporation's management, made money principally through salaries as officers, and did not receive large dividends); *Clark v. Lubritz*, 113 Nev. 1089, 944 P.2d 861 (1997) (closely held corporation functioned as partnership).   In a closely held corporation, majority shareholders, particularly those with management responsibilities, have a fiduciary duty to protect the interests of minority shareholders.   *E.g.*, *Mims v. Valley Nat. Bank*, 14 Ariz. App. 190, 192, 481 P.2d 876, 878 (1971); *Donahue v. Rodd Electrotype Co. of New England*, 367 Mass. 578, 328 N.E.2d 505 (1975).   But Andes and PCT International have cited no authority holding that

- 28 -

shareholder status alone imposes a fiduciary duty, even within a closely held corporation.[6]

Count I of the First Amended Complaint alleges that "Defendants, either directly or as alter egos, entered into special, confidential relationships with [Andes and PCT International] as integrally involved corporate insiders," and each owed Andes and PCT International fiduciary duties. (Doc. 72 at 24.) Count II alleges, "The Defendants each provided substantial assistance and knowingly participated in the breaches of fiduciary duty committed by the other Defendants." (*Id.* at 25.)

The First Amended Complaint alleges that all of the Defendants owed fiduciary duties to Andes and PCT International through (1) Mr. Lan's special, confidential relationship with Andes and (2) as direct or indirect shareholders of Andes. It alleges that Youtsey, as president and founder of PCT International, developed a special and confidential relationship of trust with Mr. Lan, on behalf of EZconn, beyond that of a mere contract manufacturer. The First Amended Complaint also alleges that, because Mr. Lan was a trusted business partner, Andes and PCT International allowed Mr. Lan to invest in Andes and hold his ownership interest through Kun-Te Yang, Dennis Lan, and Polar Star. The First Amended Complaint alleges that Andes operated like a partnership, most substantial business decisions were addressed through communications between Mr. Lan and Mr. Youtsey, and "these communications were usually facilitated by English speaking representatives of EZconn and/or eGtran" because Mr. Lan does not speak

---

[6] Whether Arizona or Nevada law governs makes no difference in this case. However, Andes and PCT International contend that Nevada, the place of Andes' incorporation, applies to the determination of fiduciary duties, relying on *AMERCO v. Shoen*, 184 Ariz. 150, 152 n.1, 907 P.2d 536, 538 n.1 (Ct. App. 1995). The *AMERCO* footnote states that no choice-of-law issues were raised, but Nevada law would have applied because it was the place of incorporation. It cites §§ 302 and 309 of the Restatement (Second) of Conflict of Laws (1971), which provide direction for deciding choice-of-law issues when determining a corporation's obligations to shareholders and creditors and a director's or officer's liability to the corporation, its creditors, and its shareholders. Neither section addresses choice of law when deciding a shareholder's liability.

English.   (Doc. 72 at 18.)   It does not allege any facts supporting Andes and PCT International's claim that Mr. Lan, EZconn, eGtran, or any other Defendant developed a special, confidential relationship with Andes and PCT International.

The First Amended Complaint also does not allege facts showing that any of the Defendants had a fiduciary duty to Andes and PCT International because of direct or indirect shareholder status.  It alleges that no Andes shareholder held a majority position, and it does not allege that all shareholders held equal ownership.  It does not allege that any of the Defendants served as a director, had management responsibilities, or held a position of superiority over other shareholders.  Even if Mr. Lan could be liable for conduct of shareholders Kun-Te Yang, Dennis Lan, and Polar Star, the First Amended Complaint does not allege facts imposing fiduciary duties on those shareholders.

The First Amended Complaint does not allege facts showing that any of the Defendants owed a fiduciary duty to Andes and PCT International.  Therefore, none of the Defendants can be liable for aiding and abetting a breach of fiduciary duty by any other Defendant.  Therefore, Counts I and II will be dismissed as to Mr. Lan, EZconn, and eGtran.

## H.  Count III:  Usurpation of Corporate Opportunities (Against All Defendants)

"The 'corporate opportunity doctrine' prohibits fiduciary usurpation of a corporate opportunity.  It requires a fiduciary who learns of a corporate opportunity to disclose it to the corporation before seeking to appropriate the opportunity for himself."  *AMERCO v. Shoen*, 184 Ariz. 150, 158, 907 P.2d 536, 544 (Ct. App. 1995).

The First Amended Complaint does not allege facts from which it can be inferred that Mr. Lan, EZconn, or eGtran had a fiduciary relationship with Andes and PCT International.  Therefore Mr. Lan, EZconn, and eGtran cannot be liable for usurpation of corporate opportunities.  Therefore, Count III will be dismissed as to Mr. Lan, EZconn, and eGtran.

1

2     ### I.      Count VIII:  Constructive Fraud (Against All Defendants)

3            Constructive fraud is "a breach of a legal or equitable duty which, without regard

4     to moral guilt or intent of the person charged, the law declares fraudulent because the

5     breach tends to deceive others, violates public or private confidences, or injures public

6     interests." *Lasley v. Helms,* 179 Ariz. 589, 591, 880 P.2d 1135, 1137 (Ct. App. 1994).

7     "While it does not require a showing of intent to deceive or dishonesty of purpose, it does

8     require a fiduciary or confidential relationship." *Dawson v. Withycombe*, 216 Ariz. 84,

      107, 163 P.3d 1034, 1057 (Ct. App. 2007).

9            Count VIII alleges that because of the "special, confidential relationship" between

10    Andes/PCT International and Defendants and "Defendants' status as corporate insiders,"

11    Andes and PCT International entrusted Defendants with their confidential proprietary

12    information, and Defendants breached their duties to Andes and PCT International by

13    disclosing Andes and PCT International's confidential proprietary information to Andes

14    and PCT International's competitors and by other actions.  (Doc. 72 at 34.)

15           The First Amended Complaint does not allege facts from which it can be inferred

16    that Mr. Lan, EZconn, or eGtran had a fiduciary or confidential relationship with Andes

17    and PCT International.  Moreover, the First Amended Complaint fails to identify the role

18    of each defendant in the alleged fraudulent scheme.  *See Swartz v. KPMG LLP*, 476 F.3d

19    756, 764-765 (9th Cir. 2007).

20           Therefore, Count VIII will be dismissed as to Mr. Lan, EZconn, and eGtran.

21    ### J.      Count VII:  Fraud (Against Mr. Lan, EZconn, and eGtran)

22
      To state a claim for common law fraud under Arizona law, a plaintiff must plead
23
      nine elements:
24
           (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's
25         knowledge of its falsity or ignorance of its truth; (5) the speaker's intent
           that it be acted upon by the recipient in the manner reasonably
26         contemplated; (6) the hearer's ignorance of its falsity; (7) the hearer's
           reliance on its truth; (8) the hearer's right to rely on it; (9) the hearer's
27         consequent and proximate injury.

28

*Comerica Bank v. Mahmoodi*, 224 Ariz. 289, 291-92, 229 P.3d 1031, 1033-34 (Ct. App. 2010).  In alleging fraud, the circumstances must be alleged with particularity.  Fed. R. Civ. P. 9(b).  Rule 9(b) requires allegations of fraud to be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong."  *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001). Plaintiffs alleging fraud "must state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986); *accord Odom v. Microsoft Corp.*, 486 F.3d 541, 553 (9th Cir. 2007).

> Rule 9(b) does not allow a complaint to merely lump multiple defendants together but requires plaintiffs to differentiate their allegations when suing more than one defendant and inform each defendant separately of the allegations surrounding his alleged participation in the fraud.  In the context of a fraud suit involving multiple defendants, a plaintiff must, at a minimum, identify the role of each defendant in the alleged fraudulent scheme.

*Swartz v. KPMG LLP*, 476 F.3d 756, 764-765 (9th Cir. 2007) (internal quotation marks, alteration marks, and citations omitted).  The representation must relate to either a past or existing fact, not "unfilled promises, expressions of intention or statements concerning future events unless such were made with the present intention not to perform."  *Staheli v. Kauffman*, 122 Ariz. 380, 383, 595 P.2d 172, 175 (1979).

Count VII alleges two types of representations made by Mr. Lan and EZconn:  (1) promises made in 1997 before PCT International began a contractual relationship with EZconn and (2) contract terms incorporated into PCT International's purchase orders. All of these alleged representations concern EZconn's obligation to protect Andes and PCT International's confidential proprietary information.  The First Amended Complaint does not specifically allege "the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations."

1    Count VII summarily alleges that these representations were false and misleading

2    when made and that Mr. Lan, EZconn, and eGTran knew these representations were false

3    and misleading when they were made.  But the representations did not relate to past or

4    existing facts, so they could not have been false when made.  They are expressions of

5    intention or statements about future events, and Andes and PCT International do not

6    allege they were made with the present intention not to perform.  Instead, Andes and PCT

7    International assert that the representations "*became* palpably false" by "at least 2012,"

8    which is when PCT International sued Holland Electronics, LLC, for patent infringement.

9    (Doc. 73 at 15, Doc. 74 at 12, Doc. 75 at 13.)

10    Count VII alleges that Andes and PCT International reasonably relied on these

11    representations and "would not have disclosed [their] confidential proprietary

12    information or conducted business with EZconn absent such representations."  (Doc. 72

13    at 33.)  But the First Amended Complaint alleges that Andes and PCT International

14    provided EZconn with confidential proprietary information pursuant to the contractual

15    agreement between PCT International and EZconn.  Andes and PCT International do not

16    allege any reliance beyond performing contractual obligations to EZconn.

17    Further, Count VII alleges that "before, during and after these representations,

18    EZconn and Mr. Lan were actively disclosing [Andes and PCT International]'s

19    confidential proprietary information to [Andes and PCT International]'s competitors,

20    while also seeking to convert [Andes and PCT International]'s intellectual property by

21    secretly filing patent applications claiming as EZconn's own intellectual property

22    belonging to [Andes and PCT International]."  (*Id.* at 33.)  Alleging that Defendants

23    disclosed Andes and PCT International's confidential information *before* they made the

24    representations contradicts the allegation that Andes and PCT International provided

25    EZconn the information in reliance on the representations.

26    The First Amended Complaint does not plead a fraud claim with Rule 9(b)

27    particularity.  Even if it were held to a lesser standard, it fails to state a fraud claim upon

28    which relief can be granted.  Mr. Lan and representatives of EZconn allegedly gave PCT

International assurances about protecting PCT International's confidential information before EZconn and PCT International formed a contractual relationship. As alleged, it was necessary for PCT International to provide EZconn with certain information in order for EZconn to perform under the contract. When PCT International sent to EZconn purchase orders, certain Terms and Conditions allegedly were incorporated. EZconn manufactured and delivered to Andes and PCT International the products it ordered, which could be considered as accepting the Terms and Conditions. As alleged, EZconn breached the terms regarding protecting Andes and PCT International's confidential proprietary information, and Andes and PCT International suffered pecuniary loss. Viewing Count VII generously, it alleges no more than a breach of contract claim against EZconn.

In addition, Andes and PCT International contend that any false representation by EZconn is attributable to eGtran because EZconn is eGtran's alter ego. As previously concluded, Andes and PCT International have not pled sufficient facts to show alter ego status among Mr. Lan, EZconn, and eGtran.

Therefore, Count VII will be dismissed as to Mr. Lan, EZconn, and eGtran.

### K. Count VI: Tortious Interference with Prospective Economic Advantage (Against All Defendants)

To establish a claim for tortious interference with prospective economic advantage, a plaintiff must prove (1) it had a valid contractual relationship or business expectancy; (2) the defendant knew of the relationship or expectancy; (3) the defendant intentionally interfered, which induced or caused a breach or termination of the relationship or expectancy; and (4) the plaintiff incurred damages as a result of the disrupted relationship or expectancy. *Telesaurus VPC, LLC v. Power*, 623 F.3d 998, 1009 (9th Cir. 2010); *Dube v. Likins*, 216 Ariz. 406, 412, 167 P.3d 93, 99 (Ct. App. 2007). "As a general rule, an action for tortious interference with a business relationship requires a business relationship evidenced by an actual and identifiable understanding or agreement which in all probability would have been completed if the defendant had not

1   interfered." *Dube*, 216 Ariz. at 414, 167 P.3d at 101 (citation omitted).  The plaintiff

2   must identify the specific relationship with which the defendant interfered.  *Id.*  "A claim

3   for tortious interference with a business expectancy is insufficient unless the plaintiff

4   alleges facts showing the expectancy constitutes more than a mere 'hope.'"  *Id.* at 412,

5   167 P.3d at 99.

6         The defendant's conduct must be "improper" before liability will attach.  *Id.* at

7   413, 167 P.3d at 100; *Miller v. Hehlen*, 209 Ariz. 462, 471, 104 P.3d 193, 202 (Ct. App.

8   2005).  And a competitor's conduct is not improper if "his purpose at least in part is to

9   advance his own economic interests."  *Miller*, 209 Ariz. at 471, 104 P.3d at 202.  A court

10  should be cautious in finding liability where the effect of a defendant's interference is

11  only to cause the cancellation of a terminable contract.  *Id.* at 471-72, 104 P.3d at 202-03.

12        Count VI alleges that "Defendants wrongfully interfered with [Andes and PCT

13  International]'s prospective contractual relationships and economic advantages by, for

14  example, wrongfully using [Andes and PCT International]'s valuable intellectual

15  property and confidential information to manufacture infringing products sold by Holland

16  that embodied [Andes and PCT International]'s patented technology, and assisting

17  Holland in the sales of those infringing products."  (Doc. 72 at 30.)  Count VI further

18  alleges that "[Andes and PCT International] had prospective contractual relationships and

19  economic advantages, for example, with existing and customers interested in purchasing

20  products embodying [Andes and PCT International]'s proprietary and patented

21  technology." (Doc. 72 at 30.)  It provides two examples of business expectancies:  (1) an

22  opportunity to supply products embodying PCT International's patented technology to

23  Holland Electronics, LLC; and (2) a then-existing relationship with Teléfonos de México,

24  S.A.B. de C.V., known as Telmex, through which PCT International was the exclusive

25  supplier of products embodying PCT International's patented technology.

26        The first example is contradicted by Andes and PCT International's allegations

27  that Holland is a direct competitor of Andes and PCT International.  The First Amended

28  Complaint does not allege facts showing that Holland likely would have purchased

products from PCT International instead of manufacturing its own using a technology different from PCT International's patented technology.  In its responses to the motions to dismiss, Andes and PCT International do not defend their allegation that they had an opportunity to supply products to Holland.

Regarding the second example, the First Amended Complaint alleges that before Defendants' wrongful disclosures to Holland, PCT International sold large volumes of their products to Telmex, but after the disclosures, Telmex began purchasing those products from Holland instead of from PCT International.  It does not allege any factual basis showing a business expectancy constituting more than mere hope for a continued relationship with Telmex and a constant volume of sales.  It does not allege which, if any, of the Defendants knew about Andes and PCT International's business expectancy or interfered with Andes and PCT International's relationship with Telmex.

Moreover, it is not plausible that Mr. Lan, EZconn, and eGtran would act against their own self-interest.  If Mr. Lan was an indirect shareholder in Andes, reducing PCT International's sales revenues would reduce the value of Mr. Lan's ownership interest in Andes.   In addition, damaging PCT International's earnings would decrease the likelihood that Andes could pay its debt to Mr. Lan.  If EZconn earned the same profit for supplying products to Holland as it did for supplying products to PCT International, there would be no incentive for EZconn to facilitate diversion of sales to Telmex from PCT International to Holland.

Count VI does not plead facts showing that Mr. Lan, EZconn, and/or eGtran intentionally interfered with a prospective relationship or expectancy, which induced or caused a breach or termination of the relationship or expectancy.  Therefore, Count VI will be dismissed as to Mr. Lan, EZconn, and eGtran.

**L.    Count X:    Unfair Competition (Common Law) (Against All Defendants)**

To maintain an action for unfair competition under Arizona law, a plaintiff must show either (1) it was engaged in competitive business with the defendant or (2) the

defendant's actions were likely to produce public confusion. *Sutter Home Winery, Inc. v. Vintage Selections, Ltd.*, 971 F.2d 401, 407 (9th Cir. 1992). To be in competition with each other, parties must solicit the same trade or solicit the same customers. *Id.* at 408.

Count X alleges:

> 172.   Defendants entered into a secret partnership with at least one of [Andes and PCT International]'s competitors, Holland, by which they disclosed [Andes and PCT International]'s valuable intellectual property and confidential, proprietary information to Holland; and then wrongfully used [Andes and PCT International]'s valuable intellectual property and confidential, proprietary information to manufacture infringing products for Holland that utilized [Andes and PCT International]'s patented technology. The Defendants[] then provided additional [Andes and PCT International] confidential, proprietary information to Holland for the purpose of unfairly competing with [Andes and PCT International].

> . . . .

> 175.   Additionally, EZconn, acting at the direction and control of Mr. Lan, also converted [Andes and PCT International]'s intellectual property by secretly filing patent applications claiming as its own intellectual property belonging to [Andes and PCT International], without [Andes and PCT International]'s permission or license.

> 176.   By this wrongful conduct, the Defendants wrongfully created confusion as to the true inventorship of products embodying [Andes and PCT International]'s patented technology, and wrongfully deprived [Andes and PCT International] of [their] reputation as the exclusive inventor of such products.

(Doc. 72 at 36–37.)

The First Amended Complaint does not allege facts showing that Mr. Lan, EZconn, or eGtran engaged in competitive business with Andes and PCT International. It alleges only that Holland is a competitor of PCT International, EZconn assisted Holland by disclosing Andes and PCT International's confidential proprietary information, and the assistance somehow converted EZconn into a *de facto* competitor of Andes and PCT International. Applying the flawed alter ego theory, Andes and PCT International contend that by entering into this secret partnership with Holland, all of the Defendants became *de facto* competitors of Andes and PCT International. However,

assisting one of Andes and PCT International's competitors does not show that Mr. Lan, EZconn, or eGtran actually engaged in competitive business with Andes and PCT International.  The First Amended Complaint does not allege that Mr. Lan, EZconn, or eGtran sold or attempted to sell products to Telmex or other alleged customers of Andes and PCT International.  It does not allege that Mr. Lan, EZconn, or eGtran solicited the same trade or customers as Andes and PCT International.  It does not allege that Mr. Lan, EZconn, or eGtran had any ownership interest in Holland or acted as Holland's agent.

The First Amended Complaint also does not allege facts showing that the actions of Mr. Lan, EZconn, or eGtran were likely to produce public confusion.  The First Amended Complaint alleges only that by secretly filing patent applications EZconn created confusion, and these actions are attributable to Mr. Lan and eGtran under the flawed alter ego theory.  It is implausible that an application for a U.S. patent can be filed *secretly*.  But if the applications were filed secretly, they could not have created *public* confusion.  Moreover, if patents were granted to EZconn, then there would be no *confusion* if products were sold embodying the technology covered by EZconn's patent.  And if EZconn's patent applications were denied, the applications could not create confusion regarding the true inventorship of products embodying Andes and PCT International's patented technology.

Viewing Andes and PCT International's factual allegations in the light most favorable to Andes and PCT International, they do not state a claim for unfair competition that is plausible on its face.  Therefore, Count X will be dismissed as to Mr. Lan, EZconn, and eGtran.

### M.   Count XI:  Unjust Enrichment (Against All Defendants)

"Unjust enrichment occurs when one party has and retains money or benefits that in justice and equity belong to another."  *Trustmark Ins. Co. v. Bank One*, 202 Ariz. 535, 541, 48 P.3d 485, 491 (Ct. App. 2002).  To establish a claim for unjust enrichment, a party must show:  "(1) an enrichment; (2) an impoverishment; (3) a connection between the enrichment and the impoverishment; (4) the absence of justification for the

enrichment and the impoverishment; and (5) the absence of a legal remedy." *Id.* The doctrine of unjust enrichment does not apply if a specific contract governs the relationship of the parties. *Id.* at 542, 48 P.3d at 492. If enrichment results from failure to comply with contractual obligations, breach of contract is the permitted remedy. If enrichment results from conduct permitted by the contract, it is not unjust. *Id.* "If there is 'a specific contract which governs the relationship of the parties, the doctrine of unjust enrichment has no application.'" *Id.* (quoting *Brooks v. Valley Nat. Bank*, 113 Ariz. 169, 174, 548 P.2d 1166, 1171 (1976)); *accord Summers v. Gloor*, 239 Ariz. 222, 368 P.3d 930, 934 (Ct. App. 2016).

Count XI alleges that all Defendants usurped Andes and PCT International's intellectual property and confidential, proprietary information, which harmed Andes and PCT International and unjustly benefited all Defendants financially and furthered their business interests. (Doc. 72 at 38.) The First Amended Complaint alleges that "Defendants have acted to wrongfully utilize [Andes and PCT International]'s valuable intellectual property and confidential information for their own economic benefit, and to the detriment of [Andes and PCT International]." (*Id.* at 5.) The alleged wrongful conduct includes falsely claiming ownership over Andes and PCT International's intellectual property and wrongfully using Andes and PCT International's intellectual property and confidential information to boost sales to Holland. (*Id.*) The First Amended Complaint further alleges that "Defendants, under the direction and control of Mr. Lan and his affiliates, and for their own economic benefit," furthered their own business interests at the expense of Andes and PCT International and Andes and PCT International's other shareholders by disclosing Andes and PCT International's intellectual property and confidential proprietary information to competitors, including Holland, despite expressly agreeing to keep the information confidential. (*Id.* at 20.) It provides examples of wrongful disclosures to Holland, but it does not name any other competitors or give examples of any wrongful disclosures to other competitors. (*Id.* at 21.) It alleges that "Defendants and Holland" sold large volumes of infringing products,

unfairly competed with Andes and PCT International, forced Andes and PCT International to change their pricing for patented products, and caused Andes and PCT International to lose sales.  (*Id.* at 21-22.)

Count XI does not include factual allegations regarding which Defendants "acted wrongfully," relying instead on a faulty theory of alter ego liability.  The First Amended Complaint alleges that Andes and PCT International provided confidential proprietary information to EZconn as required by Andes and PCT International's contractual relationship with EZconn.  It alleges that the Terms and Conditions of PCT's written purchase orders dictated what EZconn was required to do with the confidential proprietary information.  With regard to EZconn, because there is "a specific contract which governs the relationship of the parties, the doctrine of unjust enrichment has no application."  *See Trustmark*, 202 Ariz. at 542, 48 P.3d at 492.  And there are no factual allegations that support imposing liability on any Defendant other than EZconn.  Moreover, the First Amended Complaint does not plausibly allege that any of the Defendants received economic benefit from increasing Holland's sales.

Viewing PCT's factual allegations in the light most favorable to Andes and PCT International, they do not state a claim for unjust enrichment that is plausible on its face.  Therefore, Count XI will be dismissed as to Mr. Lan, EZconn, and eGtran.

### N.      Count XII:  Civil Conspiracy (Against All Defendants)

Under Arizona law, "there is no such thing as a civil action for conspiracy." *Tovrea Land & Cattle Co. v. Linsenmeyer*, 100 Ariz. 107, 131, 412 P.2d 47, 63 (1966). "The action is one for damages arising out of the acts committed pursuant to the conspiracy.  The damage for which recovery may be had in such a civil action is not the conspiracy itself but the injury to the plaintiff produced by the specific overt acts."  *Id.* Count XII alleges, "Acting under the direction and control of Mr. Lan, with Mr. Lan as the mastermind of the conspiracy, the Defendants came to a mutual understanding that they would work in concert to harm [Andes and PCT International] as alleged in Counts I-XI above."  (Doc. 72 at 39.)  Thus, Count XII alleges that all Defendants conspired to

commit the breach of contract, fraud, etc., alleged in the other Counts, and Count XII would obtain no relief beyond that obtained in Counts I-XI.

Even if Count XII served a purpose, it fails to state a claim. Liability for civil conspiracy requires that two or more individuals agree and accomplish an underlying tort that they agreed to commit. *Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Local No. 395 Pension Trust Fund*, 201 Ariz. 474, 498, 38 P.3d 12, 36 (2002). A corporation cannot conspire with itself or with its directors if they are acting in the corporation's behalf. *Rowland v. Union Hills Country Club*, 157 Ariz. 301, 306, 757 P.2d 105, 110 (Ct. App. 1988). But when officers of a corporation act for their own purposes, they become independent actors, who can conspire with the corporation. *Id.*

The First Amended Complaint alleges that Mr. Lan served as an officer of eGtran, the parent corporation of EZconn. Mr. Lan cannot conspire with eGtran or EZconn unless he is acting independently from the companies, for his own purposes. The First Amended Complaint alleges exactly the opposite, *i.e.*, Mr. Lan directed and controlled EZconn and eGtran.

Therefore, Count XII will be dismissed as to Mr. Lan, EZconn, and eGtran.

**V.     ANDES AND PCT INTERNATIONAL'S RENEWED MOTION FOR JURISDICTIONAL DISCOVERY (DOC. 84) AND CHENG-SUN LAN'S MOTION TO STRIKE PORTIONS OF REPLY IN SUPPORT OF RENEWED MOTION FOR JURISDICTIONAL DISCOVERY OR, ALTERNATIVELY, FOR LEAVE TO FILE SUR-REPLY (DOC. 92) ARE MOOT.**

Andes and PCT International sought leave to conduct jurisdictional discovery because Mr. Lan contested personal jurisdiction. Because the Court has determined that it has personal jurisdiction over Mr. Lan, jurisdictional discovery is unnecessary. Therefore, the Renewed Motion for Jurisdictional Discovery by Andes Industries, Inc., and PCT International, Inc. (Doc. 84) and Cheng-Sun Lan's Motion to Strike Portions of Reply in Support of Renewed Motion for Jurisdictional Discovery or, Alternatively, for Leave to File Sur-Reply (Doc. 92) are moot.

## VI.     NO FURTHER LEAVE TO AMEND WILL BE GRANTED.

Leave to amend should be freely given "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  In deciding whether justice so requires, courts consider five factors:  bad faith, undue delay, prejudice to the opposing party, futility of amendment, and whether the plaintiff has previously amended the complaint.  *Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004).  "Futility alone can justify the denial of a motion to amend."  *Id.* Leave to amend should be granted if the complaint's deficiencies can be cured with additional factual allegations that are consistent with and do not contradict allegations in the challenged pleading.  *United States v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011).  Dismissal without leave to amend is proper if the complaint cannot be cured by any amendment.  *Id.*

Courts have "especially broad" discretion to deny leave to amend where the plaintiff already has had one or more opportunities to amend a complaint.  *Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1161 (9th Cir. 1989).  "Leave to amend need not be given if a complaint, as amended, is subject to dismissal."  *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 538 (9th Cir. 1989).

Here, Andes and PCT International were ordered to lodge a proposed amended complaint containing all further allegations they could make against Mr. Lan, Polar Star, EZconn, and eGtran.  They were warned that leave for further amendment beyond that would not be granted.  The proposed First Amended Complaint presumably contains all further allegations Andes and PCT International could make, and the Court considered it in deciding these motions to dismiss.

During oral argument, there was discussion regarding emails between EZconn and Holland Electronics produced during discovery in *PCT International, Inc. v. Holland Electronics, LLC*, CV-12-001797-PHX-JAT, and whether they might provide a basis for further amendment of the First Amended Complaint.  Counsel for Andes and PCT International stated that he was in the process of finalizing a stipulated protective order to permit Andes and PCT International to file the emails in this consolidated case.  If

- 42 -

necessary, Andes and PCT International would like to amend their complaint to include more specific allegations based on the emails.  Counsel for EZconn, eGtran, Mr. Lan, and Polar Star stated they opposed granting Andes and PCT International leave to amend their complaint again because there was no reason for Andes and PCT International's failure to plead in the First Amended Complaint all of the allegations they could have made and further amendment would impose unnecessary expenses on EZconn, eGtran, Mr. Lan, and Polar Star.  To date, neither a stipulated protective order nor the emails have been filed in this case.  However, because the emails were filed under seal in *PCT International, Inc. v. Holland Electronics, LLC*, CV-12-001797-PHX-JAT, the Court was able to review them.  Upon review of the emails discussed during oral argument, the Court concludes that the emails do not indicate that Andes and PCT International could cure pleading deficiencies by further amendment.  Thus, it would be futile for Andes and PCT International to further amend their pleading if additional factual allegations are limited to those consistent with factual allegations in the First Amended Complaint.

Therefore, no further leave to amend will be granted.

IT IS THEREFORE ORDERED directing the Clerk to file the proposed First Amended Complaint (lodged as Doc. 72).

IT IS FURTHER ORDERED that Polar Star Management Ltd.'s Motion to Dismiss (Doc. 114, CV-15-02549) is granted.  The First Amended Complaint is dismissed with prejudice as to Polar Star Management Ltd.

IT IS FURTHER ORDERED that Defendant Cheng-Sun Lan's Motion to Dismiss (Doc. 133, CV-15-02549) is granted.  The First Amended Complaint is dismissed with prejudice as to Cheng-Sun Lan.

IT IS FURTHER ORDERED that Defendant EZconn Corporation's Motion to Dismiss Counts I, II, III, VI, VII, VIII, IX, X, XI, and XII (Doc. 26, CV-15-01810) is granted in part and denied in part.  The First Amended Complaint is dismissed with prejudice as to EZconn except for Count IV for breach of contract and Count IX for breach of the implied duty of good faith and fair dealing.

1    IT IS FURTHER ORDERED that Defendant eGtran Corporation's Motion to
2 Dismiss Counts I, II, III, V, VI, VII, VIII, IX, X, XI, and XII (Doc. 28, CV-15-01810) is
3 granted.  The First Amended Complaint is dismissed with prejudice as to eGtran.

4    IT IS FURTHER ORDERED that the Renewed Motion for Jurisdictional
5 Discovery by Andes Industries, Inc., and PCT International, Inc. (Doc. 84, CV-15-00600)
6 and Cheng-Sun Lan's Motion to Strike Portions of Reply in Support of Renewed Motion
7 for Jurisdictional Discovery or, Alternatively, for Leave to File Sur-Reply (Doc. 92,
8 CV-15-00600) are denied as moot.

9    Dated this 24th day of June, 2016.

10
11
12    _____
13          Neil V. Wake
         United States District Judge
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

- 44 -