1  **WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Crestwood Capital Corporation,<br><br>Plaintiff,<br><br>v.<br><br>Andes Industries, Inc.,<br><br>Defendant. | No. CV-15-00600-PHX-NVW<br><br>(Consolidated)<br><br>**ORDER**<br><br>**[Re: No. CV-15-01810-PHX-NVW]** |
| Devon Investment Inc.,<br><br>Plaintiff,<br><br>v.<br><br>Andes Industries, Inc.,<br><br>Defendant. | No. CV-15-00604-PHX-NVW |
| Preston Collection Inc.,<br><br>Plaintiff,<br><br>v.<br><br>Steven Youtsey,<br><br>Defendant. | No. CV-15-00607-PHX-NVW |
| Andes Industries, Inc.; and PCT International, Inc.,<br><br>Plaintiffs,<br><br>v.<br><br>EZconn Corporation; and eGtran Corporation,<br><br>Defendants. | No. CV-15-01810-PHX-NVW |

| Andes Industries, Inc.; and PCT International, Inc., | No. CV-15-02549-PHX-NVW |
|---|---|
| Plaintiffs, | |
| v. | |
| Cheng-Sun Lan; Kun-Te Yang; Chi-Jen Dennis) Lan; Polar Star Management Ltd., | |
| Defendants. | |

Before the Court is EZconn Corporation's Motion for Summary Judgment (Doc. 197 (redacted), Doc. 205 (sealed)). EZconn seeks summary judgment in its favor on PCT's two remaining claims against EZconn, *i.e.*, breach of contract (Count IV) and breach of the implied duty of good faith and fair dealing (Count IX).

## I. LEGAL STANDARD

Summary judgment is proper if the evidence shows there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party must produce evidence and show there is no genuine issue of material fact. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). If the burden of persuasion at trial would be on the nonmoving party, the party moving for summary judgment may carry its initial burden of production under Rule 56(c) by producing "evidence negating an essential element of the nonmoving party's case," or by showing, after suitable discovery, that the "nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial." *Id.* at 1106.

The party seeking summary judgment bears the initial burden of identifying the basis for its motion and those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which demonstrate the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When the moving party has carried its burden, the nonmoving

party must produce evidence to support its claim or defense by more than simply showing "there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To defeat a motion for summary judgment, the nonmoving party must show that there are genuine issues of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A material fact is one that might affect the outcome of the suit under the governing law. *Id.* at 248. A factual issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

On summary judgment, the nonmoving party's evidence is presumed true, and all inferences from the evidence are drawn in the light most favorable to the nonmoving party. *Eisenberg v. Ins. Co. of North America*, 815 F.2d 1285, 1289 (9th Cir. 1987); *Baldwin v. Trailer Inns, Inc.*, 266 F.3d 1104, 1117 (9th Cir. 2001). But it is not the Court's task "to scour the record in search of a genuine issue of triable fact." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). The evidence presented by the parties must be admissible. LRCiv 56.1(a), (b); *see* Fed. R. Civ. P. 56(e). Conclusory and speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and to defeat summary judgment. *Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion." Fed. R. Civ. 56(e)(2).

## II. UNDISPUTED MATERIAL FACTS

PCT International, Inc., is a closely held Nevada corporation with its principal place of business in Mesa, Arizona. It develops, manufactures, and sells products for broadband telecommunication networks. EZconn Corporation is a Taiwanese corporation.

PCT had a relationship with Cheng-Sun Lan, who was a principal in EZconn. This relationship did not involve a formal written agreement, but included Lan investing in PCT, Lan's nominees becoming shareholders of PCT's parent company, and PCT

sharing confidential trade secret and financial information with Lan and EZconn. PCT and EZconn routinely marked documents "confidential." PCT invested significant time, energy, and resources in helping EZconn develop the capacity to manufacture for PCT the broadband telecommunications products PCT sold to distributors and customers worldwide. EZconn filed patent applications at PCT's direction and on PCT's behalf in the United States, China, and Taiwan.

In addition, EZconn had a sales relationship with PCT whereby EZconn manufactured and supplied broadband communications components to PCT. When a PCT customer submitted a purchase order to PCT or when PCT needed to place its product in inventory in response to a customer's forecasted need, PCT ordered its own products from EZconn. PCT would initiate orders of specific quantities of specific goods to be manufactured by sending a purchase order to EZconn. Upon receipt of PCT's purchase order, EZconn's regular business practice was to respond by providing a pro forma invoice to PCT by email, attaching a copy of PCT's purchase order. EZconn would then fulfill the order, either from goods in inventory (if available) or by manufacturing necessary quantities. After shipping the goods, EZconn would provide PCT a final invoice by email.

After May 19, 2009, PCT began printing "Purchase Order Terms and Conditions" on the back side of purchase orders sent to its vendors. On October 21, 2009, PCT emailed to EZconn a purchase order that included a more detailed version of "Purchase Order Terms and Conditions" as the second page of a PDF document, and EZconn returned to PCT a pro forma invoice that attached the purchase order with the revised "Purchase Order Terms and Conditions." Although EZconn attached the purchase order with the "Purchase Order Terms and Conditions," there is no indication that EZconn accepted the "Purchase Order Terms and Conditions." PCT admits that it does not know whether EZconn ever said anything to PCT that indicated EZconn's acceptance of the "Purchase Order Terms and Conditions" as part of the parties' contract.

PCT posted the revised "Purchase Order Terms and Conditions"[1] on its website on April 29, 2010 (in Chinese) and May 5, 2010 (in English). Shortly thereafter, PCT revised its purchase order to include an electronic link to the "Purchase Order Terms and Conditions." PCT never mentioned the link when it sent purchase orders to EZconn.

The revised "Purchase Order Terms and Conditions" states, "All data, documents, materials, and other information supplied by Buyer, including drawings, specifications, financial, marketing and customer data and other business information, and all proprietary rights embodied therein are exclusively reserved by Buyer and the same shall not be used, disclosed or reproduced for any purpose except the performance of work under this order." It further states, "Seller is hereby notified that this order is proprietary information of Buyer. Unless specifically authorized in writing by Buyer, Seller shall not discuss this order with third parties to the order. These third parties include without limitation Buyer's customers, Buyer's other vendors, Seller's other customers, Seller's vendors, the general public, or the media."

PCT does not know whether PCT and EZconn ever had any communications about the "Purchase Order Terms and Conditions." PCT does not know whether EZconn said anything to PCT that indicated EZconn's acceptance of the "Purchase Order Terms and Conditions" in any of its versions.

In its First Amended Complaint, PCT alleged that PCT engaged EZconn as its contract manufacturer and, pursuant to this contractual agreement, PCT provided EZconn with detailed confidential technical information regarding its proprietary product designs, including PCT's amplifiers and patented coaxial cable connectors. PCT further alleged that Lan and others at EZconn assured PCT that they "would take steps" to properly protect PCT's confidential proprietary information, including product designs, related technical information, and pricing information.

---

[1] All versions of the "Purchase Order Terms and Conditions" included in the record are in extremely small type.

- 5 -

Count IV (Breach of Contract) of the First Amended Complaint alleges, in part:

> 111. PCT and EZconn are parties to contracts by which EZconn manufactured various products for PCT pursuant to PCT's specifications. Each such contract incorporated detailed Terms and Conditions, including those terms set forth above.
>
> 112. PCT performed all of its material obligations owed under these contracts.
>
> 113. EZconn breached its obligations under these contracts by, *inter alia*:
>
>     a. Wrongfully using PCT "items . . . materials, data, technical information, [] intellectual property," and other property for their own benefit;
>
>     b. Using PCT's property for purposes other than production or delivery of products manufactured for PCT;
>
>     c. Using PCT's materials and intangibles for the benefit of parties other than PCT;
>
>     d. Reproducing PCT's property, including materials, data, technical information, and intellectual property without PCT's prior written authorization; and
>
>     e. Claiming right, title, and interest to inventions utilizing PCT's intellectual property.

(Doc. 102 at 27-28.)

Count IX (Breach of Implied Duty of Good Faith and Fair Dealing) of the First Amended Complaint alleges, in part:

> 160. EZconn and PCT were each parties to contracts pursuant to which they owed PCT a duty of good faith and fair dealing.
>
> 161. Further, as alleged above, EZconn was in a special, confidential relationship with PCT by which EZconn owed PCT a fiduciary duty.
>
> . . . .
>
> 164. EZconn and eGtran had a special, confidential relationship with PCT such that PCT placed its trust and confidence in EZconn and eGtran.
>
> 165. By the wrongful and illegal conduct alleged herein, EZconn and eGtran breached their duties of good faith and fair dealing owed to PCT.

(*Id.* at 35.)

In response to EZconn's interrogatory requesting disclosure of all factual and legal bases for PCT's breach of contract claim, including identification of each breached contract and each breached contract term, PCT identified the following: (1) the parties' collaborative relationship that involved the sharing of confidential information and EZconn investing in PCT; (2) the "Project Surge Relief Seizure" Non-Disclosure Agreement between PCT's parent company and EZconn's predecessor entity dated April 27, 2001; (3) the written "Purchase Order Terms and Conditions" printed or identified on PCT's purchase orders; and (4) an agreement that EZconn would act as PCT's agent in seeking patents for PCT on PCT's products. PCT stated that evidence of EZconn's acknowledgement of the "Purchase Order Terms and Conditions" included EZconn's acceptance of the purchase orders, marking of documents as "CONFIDENTIAL," and "communications from EZconn to PCT with confidentiality language or referencing the confidentiality of the underlying material." PCT's response to the interrogatory did not identify the specific purchase orders or communications to which it referred.

PCT's interrogatory response identified the following breaches: (1) EZconn designed competing products for Holland Electronics and others using PCT's confidential, proprietary technical information; (2) EZconn disclosed PCT's technical, financial, and competitive information to Holland Electronics; (3) EZconn sought its own patents on PCT's inventions; and (4) EZconn sold PCT-branded connectors in Poland.

### III. RELEVANT PROCEDURAL BACKGROUND

On March 18, 2014, PCT sued EZconn in the United States District Court for the District of Nevada. On March 25, 2015, the Nevada court dismissed PCT's claims against EZconn for lack of personal jurisdiction. On September 10, 2015, PCT sued EZconn in this Court, pleading the same claims it had pled in Nevada.

On February 16, 2016, EZconn moved to dismiss all of PCT's claims against EZconn except breach of contract (Count IV). On March 10, 2016, the Court ordered that PCT could propose an amended complaint with its response to EZconn's motion to

dismiss and that the proposed amended complaint must contain all further allegations that PCT could make against EZconn. On March 16, 2016, PCT lodged a proposed First Amended Complaint and filed its response to EZconn's motion to dismiss. On June 24, 2016, the Court granted PCT leave to file the proposed First Amended Complaint and deemed EZconn's motion to be a motion to dismiss the First Amended Complaint. The Court dismissed all of PCT's claims against EZconn except for breach of contract (Count IV) and breach of the implied duty of good faith and fair dealing (Count IX). The June 24, 2016 Order stated that no further leave to amend would be granted.

On July 21, 2016, formal discovery commenced.

On October 27, 2016, the Court ordered that PCT produce a Rule 30(b)(6) witness for deposition by EZconn regarding the specific facts on which PCT's claims were based and alleged damages. The Court further ordered that EZconn would be permitted to file a motion for summary judgment to the extent it relied on PCT's admissions, discovery responses, or Rule 30(b)(6) testimony that could not be contested by PCT. On February 14, 2017, EZconn moved for summary judgment on PCT's claims for breach of contract and breach of the implied duty of good faith and fair dealing.

On March 10, 2017, PCT filed a response to EZconn's motion for summary judgment or, alternatively, a motion under Rule 56(d) of the Federal Rules of Civil Procedure to defer consideration of EZconn's motion for summary judgment. In its request for Rule 56(d) relief, PCT asserted that deferring consideration of the motion for summary judgment would permit PCT to receive production of requested documents and conduct depositions scheduled for March, April, and May 2017. PCT contended that much of the information it needed to prove its claims against EZconn was unavailable to PCT and was within the possession, custody, and control of EZconn.

Also on March 10, 2017, PCT moved for leave to file a Second Amended Complaint to allege additional facts and assert additional claims. On April 18, 2017, the Court denied PCT leave to file a Second Amended Complaint. The Court found that PCT

had previously amended its complaint, PCT's lengthy delay in seeking amendment was not justified, and further amendment would impose considerable prejudice to EZconn.

On June 12, 2017, PCT moved for leave to supplement its amended response to EZconn's motion for summary judgment and its amended response to EZconn's separate statement of facts and additional facts. On August 1, 2017, the Court granted PCT leave to supplement. Because granting PCT's motion to supplement effectively provided the relief PCT sought under Rule 56(d), *i.e.*, opportunity to submit evidence obtained from discovery during March–May 2017, the Court denied PCT's Request for Relief Pursuant to Rule 56(d) as moot.

On August 9, 2017, PCT moved for reconsideration, contending that its Rule 56(d) request was unrelated to its motion to supplement. It asserted that its Rule 56(d) request made on April 4, 2017, was based on EZconn's failure to produce documents, cooperate in scheduling depositions, and engage in substantive discovery. PCT further asserted that EZconn continued to refuse to participate in substantive discovery. On August 11, 2017, the Court denied PCT's motion for reconsideration of the denial of Rule 56(d) relief because PCT did not explain why it had not attempted to resolve this discovery dispute following procedures outlined in previous orders or how the apparent impasse would be resolved by Rule 56(d) relief.

**IV. ANALYSIS**

**A. Count IV: Breach of Contract**

PCT contends that it entered into two types of contracts with EZconn: (1) numerous contracts for specific quantities of goods that included the "Purchase Order Terms and Conditions" and (2) "an oral agreement governing the course of business between PCT and EZconn." "[I]n an action based on breach of contract, the plaintiff has the burden of proving the existence of a contract, breach of the contract, and resulting damages." *Chartone, Inc. v. Bernini*, 207 Ariz. 162, 170, 83 P.3d 1103, 1111 (Ct. App. 2004).

For a valid contract to have been formed between PCT and EZconn, "there must have been an offer, acceptance of the offer, and consideration, and they must have intended to be bound by the agreement." *Goodman v. Physical Res. Eng'g, Inc.*, 229 Ariz. 25, 28, 270 P.3d 852, 855 (Ct. App. 2011) (citations omitted). "An offer has no binding effect unless and until accepted by the offeree to whom the offer was directed." *Id.* "An agreement can be implied and is enforceable where there is a valid offer and acceptance, and the only term missing is the final price." *Id.*

"[T]he formation of a contract requires a bargain in which there is a manifestation of mutual assent to the exchange and a consideration." Restatement (Second) of Contracts § 17 (1981). "A promise may be stated in words either oral or written, or may be inferred wholly or partly from conduct." *Id.* at § 4. "The manifestation of assent may be made wholly or partly by written or spoken words or by other acts or by failure to act," but "[t]he conduct of a party is not effective as a manifestation of his assent unless he intends to engage in the conduct and knows or has reason to know that the other party may infer from his conduct that he assents." *Id.* at § 19.

"Even though a manifestation of intention is intended to be understood as an offer, it cannot be accepted so as to form a contract unless the terms of the contract are reasonably certain." *Id.* at § 33(1). "The fact that one or more terms of a proposed bargain are left open or uncertain may show that a manifestation of intention is not intended to be understood as an offer or as an acceptance." *Id.* at § 33(3). "The requirement of reasonable certainty of terms arises from the inescapable fact that the uncertainty of the promises may indicate that a proposal or acceptance was not intended to be understood as a binding offer or acceptance." *Schade v. Diethrich*, 158 Ariz. 1, 9, 760 P.2d 1050, 1058 (1988).

<u>Purchase Order Contracts</u>. It is undisputed that PCT sent purchase orders to EZconn for specific quantities of specific products and in response EZconn sent pro forma invoices. PCT has not identified any specific contracts it entered into with EZconn that included "Purchase Order Terms and Conditions." There is no evidence that EZconn

agreed to the "Purchase Order Terms and Conditions." There is no evidence that anyone at PCT told anyone at EZconn that the "Purchase Order Terms and Conditions" existed, much less that they were a condition of the Purchase Order contracts. It is PCT's burden to prove mutual assent; it is not EZconn's burden to prove lack of assent. Therefore, it is undisputed that PCT and EZconn entered into contracts for the sale of goods, but PCT has failed to prove that the sales contracts included the "Purchase Order Terms and Conditions."

The "Relationship." Count IV of the First Amended Complaint does not allege breach of an oral agreement governing the course of business between PCT and EZconn. It refers only to the Purchase Order contracts. In response to EZconn's interrogatory requesting disclosure of all factual and legal bases for PCT's breach of contract claim, including identification of each breached contract and each breached contract term, PCT did identify the parties' collaborative relationship that involved the sharing of confidential information, EZconn investing in PCT, and an agreement that EZconn would act as PCT's agent in seeking patents for PCT on PCT's products.

Assuming but not finding PCT's interrogatory response to be adequately and timely disclosed, PCT has not established the existence of an oral agreement governing the course of business between PCT and EZconn with mutual assent to reasonably certain terms. There is no evidence that EZconn agreed to be bound by any terms. It is not sufficient for PCT's CEO to state, "PCT and EZconn understood that the obligation of confidentiality was not just a rote recitation, but was a material term of the relationship." Moreover, PCT's CEO also stated, "EZconn appeared to be following the agreement, but we found out in 2014 that it was not." During his deposition, PCT's CEO testified that he believed EZconn understood that PCT's proprietary and confidential information was to be maintained as such. He further testified that the basis for his belief was that "this was the normal course of conduct" for a company with an equity interest to act in its best interest.

EZconn has shown that PCT does not have evidence of an essential element of its breach of contract claim, *i.e.*, the existence of a valid contract. PCT has not established a genuine issue of material fact such that a reasonable jury could return a verdict in is favor on Count IV.

In addition, many of the acts by EZconn that PCT contends constitute breaches of contracts occurred more than four years before PCT first filed a breach of contract claim against EZconn in Nevada on March 18, 2014. "An action for breach of any contract for sale must be commenced within four years after the cause of action accrued." A.R.S. § 47-2725(A). "A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach." A.R.S. § 47-2725(B). PCT's allegations of breach rely heavily on EZconn's communications with Holland Electronics, such as an April 10, 2006 email that referred to "a PCT design" and a March 17, 2008 email that included quantities and shipment schedules of PCT orders placed with EZconn. Because PCT did not identify specific Purchase Order contracts that were allegedly breached, even if they included the "Purchase Order Terms and Conditions" and EZconn accepted the terms, it is impossible to determine which, if any, claims are not time-barred.

### B. Count IX: Breach of Implied Duty of Good Faith and Fair Dealing

Arizona law implies a covenant of good faith and fair dealing in every contract. *Bike Fashion Corp. v. Kramer*, 202 Ariz. 420, 423, 46 P.3d 431, 434 (Ct. App. 2002). The purpose of implied terms is to ensure that neither party will act to impair the right of the other to receive the benefits that flow from the contractual relationship. *Id.* This obligation guarantees protection of the parties' reasonable expectations. *Id.*

Although the duty of good faith extends beyond the written words of a contract, the underlying contract provides the basis for an action for breach of the implied duty of good faith and fair dealing. *Wells Fargo Bank v. Arizona Laborers, Teamsters & Cement Masons Local No. 395 Pension Tr. Fund*, 201 Ariz. 474, 491, 38 P.3d 12, 29 (2002). It is undisputed that EZconn manufactured and delivered the products PCT ordered via the

Purchase Order contracts. There is no evidence that EZconn acted to impair PCT's right to receive and sell the ordered products. There is no evidence that EZconn agreed to the "Purchase Order Terms and Conditions" as part of the Purchase Order contracts. As concluded above, PCT has not established the existence of an oral agreement governing the course of business between PCT and EZconn from which an implied duty of good faith and fair dealing could arise.

PCT has not established a genuine issue of material fact such that a reasonable jury could return a verdict in is favor on Count IX.

## V. EVIDENTIARY OBJECTIONS

Pursuant to Rule 56(c)(2) of the Federal Rules of Civil Procedure and LRCiv 7.2(m)(2) and 56.1(b), EZconn has asserted numerous objections to the evidence submitted by PCT. To the extent that EZconn contends the probative value of PCT's proffered evidence is outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, and wasting time, the danger is non-existent because the evidence will not be presented to a jury. The remaining grounds for objection, *e.g.*, lack of foundation, authentication, inadmissible hearsay, lack of relevance, and not timely disclosed, are moot because EZconn's motion for summary judgment will be granted without excluding any of PCT's exhibits. EZconn's evidentiary objections are therefore overruled.

IT IS THEREFORE ORDERED that EZconn Corporation's Motion for Summary Judgment (Doc. 197 (redacted), Doc. 205 (sealed)) is granted.

IT IS FURTHER ORDERED that this case (No. CV-15-01810-PHX-NVW) is deconsolidated and final judgment is entered at this time.

IT IS FURTHER ORDERED that the Clerk enter judgment in favor of EZconn Corporation and against PCT International, Inc., and Andes Industries, Inc., and that PCT

/ / /

/ / /

/ / /

International, Inc., and Andes Industries, Inc., take nothing. The Clerk shall terminate this case.

Dated this 14th day of September, 2017.

_____
Neil V. Wake
Senior United States District Judge